472 A.2d 1068

COMMONWEALTH of Pennsylvania, Appellant,

v.

Oscar Leroy HEATON, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Stevenson Evans SAMPLE, Appellee.

Supreme Court of Pennsylvania.

Argued Jan. 26, 1984.

Decided March 16, 1984.

David M. Weixel, Sp. Prosecutor, Lock Haven, for appellant.

Stephen Smith, Lock Haven, for Heaton.

Michael F. Salisbury, Beech Creek, for Sample.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellees, Oscar Leroy Heaton and Stevenson Evans Sample, were tried together in the Court of Common Pleas of Clinton County and convicted, by a jury, of three counts of burglary, two counts of criminal conspiracy and one count of criminal mischief. On direct appeal, appellees

argued, and Superior Court agreed, that an inference of other criminal activity was improperly raised at trial and that the trial court's refusal to grant a mistrial was error. Thus, a three judge panel of Superior Court, 311 Pa.Super. 344, 457 A.2d 918, reversed and granted a new trial. We granted the Commonwealth's petition for allowance of appeal and reverse.

There was no direct evidence at trial from any source which explicitly proved that either appellant had actually been involved in other burglaries where human excrement was found. Apparently, however, the police were aware that at least one of the appellees had been involved in other burglaries where human defecation was found at the scene, for twice during the trial, as discussed, *infra*, officers' testimony indicated the police made a logical connection between the presence of human feces at the scene of a burglary and appellees' criminal activities. It is the evidence of this apparent logical connection which forms the basis for appellees' complaint.

Chief Conklin of the Castanea Police Department testified on direct examination about his finding fecal matter on the floor of the Castanea Fire Hall on the morning after the burglary. Later, on cross-examination appellee Heaton's counsel engaged Chief Conklin in the following discourse:

[BY MR. ROSAMILIA]: Did you find anything at all on the premises which would tie in either the defendant Sample or the defendant Heaton with this crime?

A. No.

Q. You did not?

A. You mean by physical evidence?

Q. Any kind of physical evidence; any fingerprints; anything?

A. [T]here was gloves used. We didn't come up with any prints.

. . . . .

Q. Do you have any personal knowledge yourself at this point that anything you found in your investigation

of these premises that would tie these two defendants in with this crime?

A. (No response.)

Q. There were no prints, I take it, right?

A. Right.

Q. Was there any other evidence? Were there clothes found? Were there things like that?

A. No, except for the defecation which is a sign of a person, almost like a painter when he signed it. A person gets excited, he can't help himself and has to go relieve himself.

*Q. Are you saying that is a sign of something?*

*A. That's a sign of something that's been found at a couple other of the burglaries that—*

(Emphasis added.) At this point, Mr. Rosamilia objected. Although the objection was overruled, the witness was instructed not to refer to any other offenses. Undeterred, Mr. Rosamilia continued:

Q. Did you find any hard evidence, any hard and fast evidence, anything to tie these two gentlemen in?

A. Just what I stated.

■ The record clearly shows the allegedly objectionable testimony was given only in direct response to defense counsel's question regarding the import of the presence of excrement at the scene. "Generally speaking, a party cannot assert error in the admission of evidence where he, himself, introduced the evidence...." *Kolb v. Hess,* 227 Pa.Super. 603, 610 n. 9, 323 A.2d 217, 221 n. 9 (1974), quoting 9 Standard Pennsylvania Practice 364 (1962). *See also,* 9 Standard Pennsylvania Practice 2d § 56:16 (1982) ("A party who is responsible for bringing out inadmissible testimony has no right to have that testimony excluded on his own motion."); 75 Am.Jur.2d *Trial* § 174 (1974) ("Where a party sees fit to go into an incompetent matter, he waives any objection to the consideration thereof by the court, since by offering evidence a party waives any objections to its competency as proof.") Thus, the trial court's

ruling was correct; the explanation having been given at appellees' request, they must be held to the consequences of their choice.

Appellees and Superior Court placed great weight on the fact the witness was a police officer, called by the Commonwealth, and, therefore, presumably appreciative of the inadmissible character of evidence of other crimes. However, it is noteworthy that Chief Conklin supplied the objected to answer only after an extended and persistent line of questioning by defense counsel, which was clearly designed to prove there was no physical evidence at the scene to connect appellees with the crime. A fair reading of the record indicates that Chief Conklin was duly reluctant to supply evidence of other crimes, and that he was compelled to do so by a relentless line of cross-examination. Under these circumstances, admission of the evidence cannot justify grant of a new trial.

Later in the trial, Officer Walakavage, of the Lock Haven City Police Department, testified that he was acquainted with both appellees and that he had seen them in the company of another accomplice in the Bucktail Bar in Lock Haven in the wee hours of the morning on the date the burglaries occurred. On redirect, the following exchange occurred:

BY [THE PROSECUTOR]:

Q. Officer, [defense counsel] asked you why you told Detective Eichenlaub the next day that you had seen [appellees] in [the bar] the day before. Why did you tell him?

A. Because Detective Eichenlaub told me of the burglary at the Castanea Fire House and the defecation they found on the floor, and I stated that I seen Oscar Heaton and Steve Sample—

Objections of both defense counsel were sustained and the jury was instructed to disregard the answer; but motions for mistrial were denied. This denial of mistrial is claimed as error.

 Although the question propounded by the prosecutor clearly sought an inadmissible response, inasmuch as the answer was interrupted no express reference to other criminal activity was made. Furthermore, no *per se* rule requires a new trial for every reference to prior criminal activity. *Commonwealth v. Richardson,* 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981). Thus, the motion for a mistrial was addressed to the discretion of the trial court to determine whether the accused was prejudiced by the objectionable comment. *See, Commonwealth v. Gardner,* 490 Pa. 421, 426, 416 A.2d 1007, 1009 (1980). The trial court noted that the objectionable testimony was "very brief and very generalized in that it did not specifically link either defendant to the defecation trait." Thus, the prejudicial impact, if any, as to either appellee was minimal.

 As, in the first instance, the reference to feces was induced by defense questioning, and as the references were so vague they could only have had a minimal impact on the jury, and as the trial court's refusal to grant a mistrial was within the limits of his sound discretion, the judgments of sentence imposed by the Court of Common Pleas will not be disturbed.

Order of the Superior Court reversed.