849 A.2d 1152

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Christopher YOUNG, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 2003.

Decided May 27, 2004.

John J. McMahon, Jr., West Conshohocken, for Christopher Young.

Hugh J. Burns, Philadelphia, for Com.

Before CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, LAMB, JJ.

## OPINION

Chief Justice CAPPY.

This court granted allowance of appeal to consider whether a mistrial was warranted after a police officer testified that a police photo was acquired from "contact with the police" and later referred to the police photo number. The trial court refused to grant a mistrial and the Superior Court affirmed. For the reasons discussed herein, we now affirm the orders of the courts below.

The facts set forth by the Superior Court establish that the police arrested Appellant, Christopher Young, following a shooting during which two persons were injured and one person murdered. Appellant and his co-defendant were tried before a jury. During trial, Detective Charles Brown, of the Philadelphia police department, related that an eyewitness to the shooting came into the police station and was shown photographs in a "photo imager." Detective Brown then explained that the photo imager can bring up photographs of individuals "who have had contact with the police" based on certain variables, descriptions, ages, and locations in different areas of the city. N.T., 11/7/2000, p. 64. Defense counsel immediately objected and requested a mistrial. *Id.* at 64–65. Following a sidebar discussion, the trial court denied counsel's request for a mistrial and offered to give a curative instruction. *Id.* at 65–69. Counsel declined the curative instruction since he "didn't want to highlight" the statement. *Id.* at 67, 69.

Thereafter, the questioning of Detective Brown resumed and the prosecutor asked whether the eyewitness identified Appellant. Detective Brown replied, "Yes, he did. He also identified a photograph of Christopher Young, Police Photo Number 775—." *Id.* at 71. The Commonwealth then asked, "Did he say anything—did he specifically say anything at all when he observed the photograph of Christopher Young?"

*Id.* Defense counsel immediately requested a sidebar. The court sustained counsel's objection and the prosecution moved on with the examination of the witness.

Following trial, the jury convicted Appellant of first degree murder, two counts of attempted murder, criminal conspiracy, and possession of an instrument of crime. The jury sentenced Appellant to life imprisonment for first degree murder. The trial court imposed a concurrent term of ten to twenty years of imprisonment on each count of attempted murder, a consecutive term of ten to twenty years for criminal conspiracy and a concurrent term of one to two years for possession of an instrument of crime. On appeal, the Superior Court affirmed the judgment of sentence.

Appellant filed a Petition for Allowance of Appeal to this court raising one issue. This court granted the petition to consider whether the trial court erred in denying a mistrial where a police witness allegedly referred to Appellant's prior criminal activity.[1]

The parties agree that our decision in *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972) guides the analysis in this case. Appellant argues that pursuant to *Allen* the statements made by Detective Brown created a reasonable inference of prior criminal conduct in the minds of the jury and denied Appellant a fair trial. Accordingly, Appellant concludes that a mistrial was warranted.

The Commonwealth responds that in this case, the detective stated that the photos were obtained from "prior police contact." Under the standard set forth in *Allen*, mere references to an accused's past contact with the police do not imply that the accused committed prior crimes. Accordingly, a mistrial was not warranted.[2]

1. In reviewing a question of whether a trial court erred in denying a motion for a mistrial, an appellate court considers whether the lower court abused its discretion. *Commonwealth v. Savage*, 529 Pa. 108, 602 A.2d 309, 312 (1992); *see also Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000).

2. The Commonwealth also asserts that any possible prejudice could have been cured by an instruction. In this case, the trial court offered

In *Allen*, this court considered whether reversible error occurred when the trial court "permitted several of the Commonwealth's witnesses to make references to the fact that the police had shown photographs of the appellant to the alleged eyewitnesses" over defense counsel's objections. *Allen*, 292 A.2d at 374. In reviewing appellant's challenge, this court specifically rejected an "inflexible" rule that any reference to a graph at trial requires reversal. Instead, the court held that the important question is

> whether or not a juror could reasonably infer from the facts presented that the accused had engage in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity.

*Id.* at 375.

The court explained that it was a fundamental precept of common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct, since admission of such evidence acts to "predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Id.; see also Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048, 1049–50 (1978). Thus, the court held that where the jury could have reasonably inferred from the photographic evidence presented at trial that a defendant was involved in prior criminal activity, reversible error occurred. *Allen*, 292 A.2d at 375.

to instruct the jury that the detective's testimony did not in any way indicate that defendant was previously arrested or engaged in prior criminal conduct. Defense counsel chose not to have cautionary instructions read to the jury; and thus, he cannot complain that the trial court erred by denying his request for a mistrial. We need not reach the Commonwealth's alternative argument because, as discussed *infra*, we conclude that the admission of the references by Detective Brown did not require a mistrial.

This court has rendered a number of decisions since *Allen,* which apply this test and clarify the scope of the inquiry.[3] In *Commonwealth v. Riggins,* 478 Pa. 222, 386 A.2d 520 (1978), this court reviewed a police detective's statement before the jury that the officer knew where the appellant lived. The appellant asserted that the statement implied the appellant had engaged in prior criminal activity. *Id.* at 524. The court held that a reversal was unwarranted since "to conclude that appellant had committed prior crimes from a detective's single statement that he knew where appellant lived, the jury would have to indulge in gross speculation." *Id.; see also Commonwealth v. Carpenter,* 511 Pa. 429, 515 A.2d 531, 534–35 (1986) (fact that jury was informed that witness was a parole officer who knew the appellant did not convey to the jury any prior criminal involvement).

Similarly, in *Commonwealth v. Carlos,* 462 Pa. 262, 341 A.2d 71, 72 (1975), the court explained that a mere passing reference that a witness identified the defendant from a number of photos displayed by a police detective was not reversible error. *Carlos,* 341 A.2d at 72; *see also Commonwealth v. Reiss,* 503 Pa. 45, 468 A.2d 451 (1983); *Commonwealth v. Smith,* 454 Pa. 515, 314 A.2d 224, 226 (1974). "In other words, aside from the fact that a police officer displayed the photograph, there was nothing else linking it to the police. It is highly unlikely that a juror would conclude from this alone that Carlos had engaged in prior criminal conduct." *Id.* at 73, 314 A.2d 224.

In *Commonwealth v. Nichols,* 485 Pa. 1, 400 A.2d 1281 (1979), the court addressed a situation where a police witness testified regarding the defendant's "obstreperous" conduct during a police lineup conducted in an unrelated criminal case. *Nichols,* 400 A.2d at 1282. Although the jury was never

---

**3.** In addition to the cases discussed, this court decided *Commonwealth v. Brown,* 511 Pa. 155, 512 A.2d 596 (1986) and *Commonwealth v. Shawley,* 522 Pa. 475, 563 A.2d 1175 (1989), which also applied the *Allen* test. Both cases, however, were plurality decisions. Thus, the reasoning set forth in those cases is not pertinent to the discussion of the instant case. *See, e.g., Commonwealth v. Bethea,* 574 Pa. 100, 828 A.2d 1066, 1073 (2003).

informed that the lineup was unrelated to the instant criminal action, the jury was told that that only one witness viewed the lineup and that witness was a woman. *Id.* at 1283. All the witnesses involved in *Nichols,* however, were men and there was no indication that a woman even witnessed the crime. *Id.* Moreover, the jury was also informed that the Commonwealth's key witness attempted to identify the alleged perpetrator through photographs and not a lineup. *Id.* Accordingly, the court concluded that the "jury could reasonably have inferred Nichols was involved in other unrelated crimes from the evidence relating to the ... lineup, prejudice resulted, and a new trial must be granted." *Id.*

Finally, in *Commonwealth v. Turner,* 454 Pa. 439, 311 A.2d 899 (1973), the court addressed a situation involving a photographic reference by a police officer. During testimony, the police officer explained that in compiling the photo display for the victim, "[he] took eighteen photographs in the Robbery Section, we have files of medium, tall and short robbery suspects and defendants ..." *Turner,* 311 A.2d at 900. After acknowledging the generally accepted rule as stated in *Allen,* the court applied those principles to the instant situation and concluded that the reference that the photographs were of "robbery suspects and defendants" amounted to prejudicial error.

A review of these cases clarifies that in applying the *Allen* test to the facts of a particular matter, a mere passing reference to photographs does not amount to prejudicial error. *Carlos.* Further, they explain that references to prior police contact do not amount to reversible error. *Riggins.* Instead, it is only those references that expressly or by reasonable implication also indicate some involvement in prior criminal activity that rise to the level of prejudicial error. *Nichols; Turner.* With these principles in mind, we turn to the facts of this case.

Detective Brown made two statements that Appellant complains of and each will be discussed separately. The first statement explained how a photo imager worked and that the

imager compiled photographs of those persons matching the description "who have had contact with the police." The circumstances of this case is akin to the situation this court confronted in *Carlos*, when a Commonwealth eyewitness referred to the identification process in which he selected the defendant's photograph after the police displayed the photographs for him to view. We therefore find that the explanation of how the photo imager compiled photographs and the statement regarding "contact with the police" focused only on prior contact with the police and did not reasonably imply prior criminal conduct. The prior contact with the police could have occurred under a variety of circumstances that were not criminal in nature including involvement in a motor vehicle accident or violation, as a witness to a crime, or as a victim of a crime.

In the second statement that Appellant asks us to review, Detective Brown made a reference to "Police Photo Number 775—." This was a mere passing reference to the photograph. There was no indication that Appellant's photo was in the possession of the police due to prior criminal activity. We reiterate that references to prior police contact, which do not imply prior criminal conduct, do not constitute reversible error.

For the reasons stated herein, we affirm the order of the Superior Court.

Former Justice LAMB did not participate in the decision of this case.

Justice SAYLOR files a concurring opinion.

Justice NIGRO files a dissenting opinion.

### CONCURRING OPINION

Justice SAYLOR.

I agree that the detective's comments were impermissible based on the law as set forth in Mr. Justice Nigro's dissent. I am able to concur in the majority's disposition, however, since,

in my view, a curative instruction would have sufficiently ameliorated the prejudice caused to Appellant by the improper remarks in this instance. See *Commonwealth v. Richardson,* 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981) ("[T]he possible prejudicial effect of a witness's reference to prior criminal conduct of the defendant may, under certain circumstances, be removed by an immediate cautionary instruction to the jury."); see also *Commonwealth v. Morris,* 513 Pa. 169, 178, 519 A.2d 374, 378 (1986) (concluding that a curative instruction alleviated the harm resulting from an impermissible reference to prior criminal activity); *Commonwealth v. Williams,* 470 Pa. 172, 178–79, 368 A.2d 249, 252 (1977) (same); *Commonwealth v. Maute,* 336 Pa.Super. 394, 403–04, 485 A.2d 1138, 1143 (1984) (determining that a defendant was not entitled to a mistrial based upon a comment regarding his prior criminal activity, because the prejudice could have been remedied by a curative instruction which the defendant refused). Here, however, as the majority notes, Appellant refused such an instruction.

### DISSENTING OPINION

Justice NIGRO.

I respectfully dissent. In my view, Detective Brown's testimony that an eyewitness had identified Appellant from a group of photographs of individuals "who have had contact with the police" could clearly have created a reasonable inference in the minds of the jury that Appellant had engaged in prior criminal conduct and as such, the trial court should have granted a mistrial based on that testimony.

As the majority notes, in *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373, 375 (1972), this Court held that the "controlling question" in determining whether a reference to a photograph is improper "is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." In applying our holding in *Allen* to the facts of the present case, the majority concludes that Detective Brown's testimony did not "reasonably imply [that

Appellant had been involved in] prior criminal conduct" because "the prior contact with the police could have occurred under a variety of circumstances that were not criminal in nature including involvement in a motor vehicle accident or violation, as a witness to a crime, or as a victim of a crime." Op. at 1156. I disagree.

Here, Detective Brown testified that an eyewitness to the shooting came to the police station and was escorted to an area of the station with computers, one of which is called a "photo imager." N.T., 11/7/2000, at 64. The detective then explained to the jury that "what that machine does is that based on certain variables, descriptions, ages, locations in different areas of the city, it can bring up photographs of individuals who have had contact with the police." *Id.* (emphasis added). Contrary to what the majority suggests, it is highly unlikely, at least in my view, that a juror would imagine that such "contact" was as a witness to or victim of a crime, or was in connection with a motor vehicle accident or violation. This is especially true given that any average layperson could reasonably question whether police even take photographs of people in such situations as a matter of routine and if so, whether the police would then place those photographs of victims and witnesses in a system being used for purposes of identifying criminal suspects. I simply find it much more tenable that the jury would deduce from the detective's testimony that at some point in the past, Appellant was involved in some type of criminal activity, at which time the police took his photograph so that it could be used in future investigations. Indeed, the use of the "photo imager" here is remarkably similar to the practice of showing an eyewitness a group of "mug shots" fitting the eyewitness' description of the suspect. Given that this Court has indicated that mug shots cannot be referred to at trial because such a reference creates an impermissible inference of prior criminal conduct in the minds of the jury, I see no reason why a detective should be permitted to refer to a machine that "brings up photographs of individuals who have had contact with the police" when such a machine appears to be little more than a computerized

catalogue of mug shots. See *Commonwealth v. Reiss*, 503 Pa. 45, 468 A.2d 451, 453 (1983) (indicating that it is error for a witness to testify that he identified a defendant from a group of mug shots or photographs that came from police files); see also *Commonwealth v. Carlos*, 462 Pa. 262, 341 A.2d 71, 73 (1975); *Commonwealth v. Smith*, 454 Pa. 515, 314 A.2d 224, 226 (1973).

Furthermore, I disagree with the majority's conclusion that the circumstances of this case are akin to those in *Commonwealth v. Carlos*, 462 Pa. 262, 341 A.2d 71 (1975) and *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978). In *Carlos*, a Commonwealth eyewitness testified that he had identified the defendant from approximately ten photographs shown to him by a detective. *Id.* at 72. There, unlike in the present case, the photographs were never characterized as pictures of individuals "who have had contact with the police." Rather, as the Court explained, "aside from the fact that a police detective displayed the [defendant's] photograph, there was nothing else linking it to the police." *Id.* at 73. Thus, the testimony in Carlos is clearly distinguishable from Detective Brown's testimony in the present case, where he went one impermissible step further and explicitly stated that the photographs were of people who "have had prior contact with the police."

Similarly, I do not believe that Detective Brown's testimony is comparable to that of the officer's testimony in *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978). In *Riggins*, the arresting officer testified that he went to talk to the defendant for the following reasons:

> [Another officer] brought out a yellow piece of paper with some names on it, and he read these names off, and one of the names I recognized and I told Lt. Martin. I said, "Since we can't talk to [the victim] now, we might as well and try to get him. I know where he lives at."

*Id.* at 524 (emphasis added). This Court held that the officer's mere passing reference to the fact that he knew where the defendant lived could not have reasonably led the jury to believe that the defendant had been involved in prior criminal

activity. *Id.* Again, this reference to knowing where the defendant lived is clearly different from what occurred here, where Detective Brown specifically explained to the jury that Appellant's photograph was in the police department's "photo imager," a computer system that brings up images of "individuals who have had contact with the police," and that the eyewitness identified Appellant from a group of 200 photographs in this "photo imager." See N.T., 11/7/2000, at 64, 70–74. Clearly, Detective Brown's repeated reference to Appellant's photograph, which the jury knew was obtained through "prior contact with the police," was much more likely to lead the jury to infer that Appellant had previously engaged in criminal conduct than the passing reference made by the officer in Riggins that he knew where the defendant lived.

Accordingly, because there is no question in my mind that Detective Brown's testimony could reasonably have led the jury to infer that Appellant had been involved in prior criminal activity, I would find that the trial court erred in refusing to grant a mistrial based on that testimony.