J-S78024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BREON DAVONNE JUDON | |
| Appellant | No. 213 MDA 2014 |

Appeal from the Judgment of Sentence December 9, 2013
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003670-2012

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                **FILED DECEMBER 24, 2014**

A jury found Breon Judon guilty of second degree murder[1], kidnapping[2], robbery[3] and three counts of criminal conspiracy[4]. The trial court sentenced Judon to life imprisonment for second degree murder plus a consecutive term of 6-12 years' imprisonment[5]. Judon filed this timely direct appeal[6], and both Judon and the trial court complied with Pa.R.A.P. 1925. We affirm.

---

[1] 18 Pa.C.S. § 2502.
[2] 18 Pa.C.S. § 2901.
[3] 18 Pa.C.S. § 3701.
[4] 18 Pa.C.S. § 903.
[5] The consecutive sentence of 6-12 years' imprisonment consisted of 2-4 years' imprisonment for conspiracy to commit a kidnapping in the course of a felony and 4-8 years' imprisonment for robbery.
[6] In addition to the present timely appeal at the above caption number, there was another timely appeal filed on Judon's behalf at 23 MDA 2014. On
*(Footnote Continued Next Page)*

The evidence adduced during trial demonstrates that on August 3-4, 2012, Judon and a co-conspirator, Mitchell Dedes, robbed Aaron Reznick of his i-Phone and vehicle at gunpoint in Hazleton, Pennsylvania, ordered him to remove his clothes, and forced him into the trunk of his car. Reznick escaped from the trunk. Judon and Dedes assaulted Reznick and inflicted severe injuries to his brain, leaving him semi-comatose. Police officers transported Reznick to the hospital, but he died on August 13, 2012. Dedes ultimately pled guilty to third degree murder.

Multiple witnesses testified that Judon admitted participating in Reznick's robbery, kidnapping and/or beating. Shawn Jackson testified that within several days after the incident, Judon admitted beating and robbing Reznick. N.T. 608-610. Tanya Stimpson testified that after Reznick was found, Judon and Dedes told her that they "did something bad and that they had to get out of town quickly." N.T. 551. Judon and Dedes explained to Stimpson that

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

February 26, 2014, this Court dismissed the appeal at 23 MDA 2014 due to the lack of a docketing statement.

The filing of the other appeal at 23 MDA 2014 does not affect our jurisdiction over the present appeal. Had Judon prosecuted both appeals, we could have consolidated these appeals _sua sponte_. **See** Pa.R.A.P. 513 ("where there is more than one appeal from the same order,. . .the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal"). Our dismissal of the appeal at 23 MDA 2014 eliminates any need for consolidation and leaves the present appeal as the sole appeal within our purview.

they had beat a man up, that they had put him in the trunk of a car, they had made him take his clothes off, that somehow he had gotten out of the trunk, and that they had beat him some more, and that – something about they had stomped on the head. And one of them – I don't know which, but they had said that he was out cold.

N.T. 549-552. Lastly, Shaun Butler, Judon's cellmate in jail, testified that Judon told him that he had robbed and kidnapped Reznick. N.T. 766-768.

Judon raises three issues in this appeal:

Did the trial court err by admitting a recorded phone conversation between Appellant and his father that was irrelevant and prejudicial?

Did the lower court err by not declaring a mistrial or issuing a cautionary instruction after the prosecutor impermissibly stated in closing that the Commonwealth did not present evidence of Appellant's bad character because it was not permitted to do so, creating in the mind of the jury an impression that such evidence existed?

Did the prosecutor commit misconduct in closing argument by referencing the lack of eyewitness testimony at trial, where Appellant's alleged coconspirator, an eyewitness to the events in question, had exercised his right to remain silent when called by the defense, and the trial court ordered all counsel to not reference the coconspirator?

Brief for Appellant, p. 5.

Judon's first argument is a challenge to the admission of a tape recorded telephone conversation between Judon and his father while Judon was in jail after his arrest. The admission of evidence

- 3 -

is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of the evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa.Super.2014).

The phone call proceeded as follows:

JUDON: That's all.
FATHER: Yeah, yeah, yeah. Because I think what's going to happen is -- they don't have nothing.
JUDON: Um-hum.
FATHER: That's why there's a deal.
JUDON: Yeah.
FATHER: Now, is that worth it?
JUDON: Yeah, it depends what they tell me.
FATHER: You know because when you say deal, you're admitting.
JUDON: Yeah. But see, the deal--the deal has to be a deal. It has--because a 20 to 40 is not a deal to me. It's not a deal because I'm young right now, even though I'm still going to be young when I get out, I don't want to hear that.
FATHER: Right.
JUDON: There's a lot of people that might not be around by the time I get out. I don't want to hear that. I don't want to hear that. So 20 to 40 is not a deal to me. 15 to 30 is not a deal to me.
FATHER: Right.
JUDON: 10 to 20 is barely a deal.
FATHER: Yeah.
JUDON: I'll take anything under 10, nothing more, nothing more.

> FATHER: Well, you're also gonna have the time served, too.
> JUDON: Yeah, but nothing more, nothing more than ten, nothing more. That's it.
> FATHER: Well, that's what I'm thinking –

N.T. 837-839.

Judon contends that this conversation is irrelevant[7]. We disagree. Pa.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 402 provides in turn: "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding

---

[7] Judon does not argue that his statements during this conversation are hearsay. Nor would this argument have been successful, for as the trial court observed, Judon's statements fit within Pa.R.E. 803(25), the exception to the hearsay rule permitting statements by a party opponent. Pa.R.A.P. 1925(b) Opinion, p. 8.

The trial court also reasoned that admission of Judon's statements did not violate Pa.R.E. 410. Pa.R.A.P. 1925(b) Opinion, pp. 6-8. In pertinent part, this rule prohibits introduction of statements by the defendant "made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later withdrawn guilty plea." Pa.R.E. 410(a)(4). Judon does not challenge the trial court's analysis of Rule 410. Indeed, he admits that the recorded statements "were not withdrawn pleas or statements made directly in the course of plea negotiations. . ." Brief For Appellant, p. 18.

the existence of a material fact." **Antidormi**, **supra**, 84 A.3d at 750. We agree with the trial court that the phone conversation between Judon and his father was relevant as Judon's admission of guilt. The subject of the conversation was a potential guilty plea "deal". Judon's father stated: "You know. . .when you say deal, you're admitting." Judon answered: "Yeah." In this context, the jury could reasonably construe Judon's answer "yeah" as an admission that he was guilty of the charges against him. Stated in terms of the foregoing definitions of relevance, Judon's answer "tends to make a fact at issue", i.e., Judon's commission of the alleged crimes, "more probable." **Antidormi**, **supra**.

Judon insists that his statement did not indicate consciousness of guilt, but that he "was merely, at his father's behest, considering his options." Brief For Appellant, p. 16. While it is possible to interpret the conversation in this manner, it also is reasonable to interpret "yeah" as an admission of guilt. Since the conversation was susceptible of more than one interpretation, it was within the trial court's discretion to admit the conversation into evidence and permit the jury to decide which interpretation to believe. Moreover, it was within the jury's province to interpret this evidence in a light favorable to the Commonwealth, i.e., as an admission of guilt. **Commonwealth v. Charleton**, 902 A.2d 554, 562 (Pa.Super.2006) ("It was within the province of the jury as fact-finder to resolve all issues of credibility, resolve conflicts in evidence, make

- 6 -

reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant guilty").

Judon also argues that this conversation was unduly prejudicial. Again, we disagree. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. However, courts should not prohibit probative evidence as unduly prejudicial merely because it is harmful to the defendant; the only evidence subject to exclusion is "evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa.Super.2012). As explained above, it is possible to interpret Judon's conversation with his father as Judon's admission of guilt. Nothing about this conversation was inflammatory. Nor did it lead the jury to base its decision on something other than the legal propositions relevant to the case. It was entirely permissible for the jury to use this evidence to decide whether Judon was guilty of the alleged crimes.

Furthermore, assuming *arguendo* that this evidence was irrelevant, its admission was at most harmless error. Harmless error exists where, *inter alia*, the erroneously admitted evidence is merely cumulative of other untainted evidence which is substantially similar to the erroneously admitted

evidence.  ***Commonwealth v. Ballard***, 80 A.3d 380, 398 (Pa.2013).  In this case, three other witnesses -- Shawn Jackson, Tanya Stimpson, and Shaun Butler -- testified that Judon admitted robbing, kidnapping and/or beating Reznick.  Even Judon's brief admits: "[N]o party to this appeal disputes [that Judon] was present in the vehicle [in which Reznick was kidnapped and locked in the trunk]."  Brief For Appellant, p. 8.  Therefore, we reject Judon's challenge to the admission of his telephone conversation with his father.

In his second argument on appeal, Judon contends that the trial court erred in refusing to grant a mistrial or issue a cautionary instruction after the prosecutor stated during closing argument that it could not offer evidence of Judon's bad character because it was not permitted to do so.  According to Judon, the prosecutor's comment created the misleading impression that bad character evidence existed that the Commonwealth could not introduce into evidence.  We conclude that Judon is not entitled to relief.

In reviewing a question of whether a trial court erred in denying a motion for a mistrial, an appellate court considers whether the lower court abused its discretion.  ***Commonwealth v. Young***, 849 A.2d 1152, 1154 n.1 (Pa.Super.2004).  The remedy of a mistrial

> is an extreme remedy required 'only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.'

With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that [i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. . .

It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

We are further mindful of the following:

In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

*Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa.Super.2012) (internal citations omitted).

In lieu of a mistrial, the trial court may issue a cautionary jury instruction to disregard an improper closing argument. The court, however,

may decline to give a cautionary instruction when the prosecutor makes a *de minimis* comment during closing argument, and a cautionary instruction would draw unnecessary attention to the remark. ***Commonwealth v. Bracey***, 831 A.2d 678, 683 (Pa.Super.2003).

In this case, the following facts are pertinent. Neither the defense nor the prosecution offered evidence of Judon's character, good or bad, during their respective cases. During closing argument, defense counsel made the following assertion with regard to a prosecution witness' testimony concerning co-conspirator Mitchell Dedes: "We heard Mr. Wing describe Mr. Dedes, white, tattoos on the neck, face teardrops. And he said it's not a person you mess with. That's not who you mess with. You don't go against him. I mean, you saw his reaction. You saw how he described him. We didn't hear anything like that about Mr. Judon." N.T. 1028. In response, during his own closing argument, the prosecutor stated:

> I have a prepared closing. But I have to address a few things before I get into what I prepared. [Defense counsel] stood up here, and she said to all of you about Tony Wing and how he described Mitchell Dedes. And she said, yeah, he said he's a bad guy; you don't want to mess with him. And she said you didn't hear him say anything about my client being like that. And you know why you didn't hear it? Because we're not allowed to tell you about those things.

N.T. 1041. Defense counsel promptly moved for a mistrial but did not seek a cautionary instruction. N.T. 1041-1042. The trial court denied counsel's motion for a mistrial, stating that defense counsel "opened the door when

- 10 -

you. . .described the witness [as] not saying anything about [Judon]." N.T. 1042-1043.

The trial court's discussion of this issue in its Rule 1925(b) opinion deserves recitation:

> The Court, in its discretion, denied the request for mistrial because the Prosecution's reference, while improper, responded to an equally improper reference from the Defense. Defense Counsel essentially testified to the Appellant's good character during closing argument. By pointing to a lack of testimony regarding Mr. Judon's bad character, Defense Counsel attempted to highlight the Appellant's good character, which potentially planted the seed in the jury's mind that the Appellant was a good man or that the Prosecution had no evidence to suggest his bad character. Such a misleading inference opened the door to the Prosecution to offer rebuttal. . . The Court cannot in good conscience allow the Defense to remain silent on the issue of good character throughout trial, then reference a lack of bad character evidence offered against the Appellant in closing argument to bolster the Appellant's case without allowing the Prosecution to cure the misleading argument.
>
> The scenario played out as follows: (1) Defense counsel made an inappropriate reference to the Appellant's good character in closing argument where neither litigant argued character evidence during their respective case-in-chief; (2) as a way to correct the Defense's misleading statement, the Prosecution responded with an equally inappropriate reference to Pennsylvania Law's prohibition on the use of bad character evidence. The Prosecution made no reference to specific instances of prior bad acts. Nor did the Prosecution make any specific reference to the Appellant having a bad reputation in the community.

> The Court, in its discretion to determine the effect of and remedy for improper comments during closing arguments, determined that the Prosecution's comments, although improper, (1) were brief and non-descript, and (2) served to correct the Defense's potentially prejudicial comment regarding the Appellant's good character. Considering the minor nature of the prosecution's comment, and the improper manner in which the Defense elicited that comment, the Court found that very little if any prejudice to the jury resulted. In any event, the Appellant's closing argument improperly opened the door to addressing the Appellant's character, thereby lessening any modicum of prejudice resulting from the Prosecution's comment. For these reasons the court denied the Appellant's request for mistrial.

Trial Court Opinion, pp. 12-13. The trial court perceptively held that the prosecutor's comment was permissible under the doctrine of "fair response" (sometimes referred to as the "invited response" doctrine). The fair response doctrine requires courts to consider whether the prosecutor's remarks during closing argument "were invited, and did no more than respond substantially in order to right the scale, in which event such comments would not warrant reversing a conviction." **United States v. Young**, 470 U.S. 1, 12-13 (1985) (internal citations omitted); **accord Commonwealth v. Brown**, 417 A.2d 181, 184 (1980) ("we may thus determine if the comments were made in fair response to defense argument" since "a prosecutor may be justified in making a reply to an argument by defense counsel which may not have been proper if made without provocation"). As the trial court reasoned, the prosecutor's comment might not have been permissible in a vacuum, but it was

permissible as a fair reply to defense counsel's improper suggestion during closing argument that Judon had good character. *Commonwealth v. Manley*, 985 A.2d 256, 268-69 (Pa.Super.2009) (defendant was not entitled to mistrial due to prosecutor's reference to defendant smoking marijuana with cellmate while they were in federal custody; statement was rebuttal to defense counsel's assertion that defendant had been drinking at party, prosecutor was attempting to offer alternate reason why defendant's demeanor was as officer described, and remarks were not of nature or kind as to have unavoidable effect of prejudicing jurors by forming in their minds fixed bias and hostility toward defendant); *Commonwealth v. Chimenti*, 524 A.2d 913, 927 & n.11 (Pa.Super.1987) (where defense counsel attacked prosecutor's integrity by saying "they send him in because he screams and he yells and he prejudices and he puts in inadmissible things," prosecutor's remark that he would "love to put in some things" was a fair response).

Judon also argues that the trial court erred by failing to issue a cautionary instruction to the jury concerning the prosecutor's remark. Judon only requested a mistrial at the time of the prosecutor's remark; he did not request a cautionary instruction. Therefore, he has waived this argument. *Commonwealth v. Russell*, 938 A.2d 1082, 1093 (Pa.Super.2007) (defendant waived challenge to court's failure to provide jury instruction on corruption of minors statute by failing to make specific objection to the

absence of the instruction). Even if Judon preserved this objection, we agree with the trial court's discussion of this subject:

> The Court, in its discretion, also found that offering a cautionary instruction to the jury would have unnecessarily drawn attention to the minor reference made during the Prosecution's closing argument. *See Bracey*, 831 A.2d at 683. Once again, the Appellant essentially elicited the Prosecution's remarks on the prohibition of character evidence by underhandedly testifying to the Appellant's good character during closing argument. In order to rebut what amounted to Defense Counsel testifying to the Appellant's good character, the Prosecution responded with a one sentence comment on the law's general prohibition on bad character evidence without mentioning specifics. These circumstances did not warrant a cautionary instruction. In fact, a cautionary instruction may well have drawn unnecessary attention to both Appellant and Prosecution's inappropriate remarks. *See id.*

Trial Court Opinion, pp. 13-14.

In his third and final argument on appeal, Judon contends that the prosecutor committed misconduct during closing argument by violating the trial court's order not to mention Mitchell Dedes' absence from trial. Prior to closing argument, the trial court instructed counsel not to mention that Dedes had refused to testify by invoking the Fifth Amendment. The trial court stated that "there should be no comment concerning why Mitchell Dedes is not here." N.T. 1009. The court elaborated:

> I think the issue is this: Clearly, there has to be a discussion in closing arguments concerning Mitchell Dedes because of the fact there's a conspiracy charge here. He's a named co-conspirator in the criminal information. The only issue that's being

- 14 -

raised is whether or not it can be argued where is he because he didn't — he failed to testify, and that cannot be.

N.T. 1010.

The prosecutor stated the following during closing argument:

During defense's opening statement, I took some notes. And during her opening —right at the end of her opening, she came up here. And in dramatic fashion, she said, the evidence is going to come from this witness chair (indicating), right front this witness chair, right there (indicating). And then she walked back and she said, you're not going to hear from any eyewitnesses in this case. And that's the one thing that I agree with her on, no eyewitnesses because Aaron was the only eyewitness to what these guys did to him. And after they stomped and kicked his head, the trauma was so bad that he never once again was able to speak a coherent word or even open his eyes. So I agree with her. You're not going to hear from an eyewitness because the eyewitness is dead, because the defendant killed him. That's why you didn't hear from an eyewitness because he's no longer here. He's no longer with us.

N.T. 1074. Defense counsel did not object to this comment during closing argument. Instead, after closing argument, counsel requested a missing witness instruction as to Dedes:

Your Honor, I didn't object [during closing argument]. But prior to closing arguments, Commonwealth had specifically indicated for me not to reference Mr. Dedes not being here or where he was as reflected in my opening. I purposely didn't reference the eyewitness because he would have been an eyewitness. I didn't say you're not going to hear from any eyewitnesses because I didn't want to call attention to that. Obviously, Mitchell Dedes is an eyewitness, and it would reflect to the jury that, well, he wasn't testifying. And I think that now that

- 15 -

counsel has raised that they're raising -- they're saying the only eyewitness is Mr. Reznick. I think it opens to a missing witness instruction now. I didn't open the door, and I stayed away as the Court had ordered. But there is the eyewitness Mitchell Dedes who could have testified.

N.T. 1078-79.

Judon now contends on appeal that the prosecutor's comments require a new trial. The trial court properly held that Judon waived this argument, and that even if Judon preserved it, it was devoid of merit:

> First, defense counsel at trial did not object to the prosecutor's comments regarding a lack of eyewitnesses to the murder at trial, but instead requested that the Court grant a Missing Witness instruction during the Charge to the Jury. . .A request for jury instruction does not equate to an objection to the prosecution's comments, a claim of prosecutorial misconduct, or a claim of violation of a Court Order. Therefore, the Appellant did not preserve the issue of any alleged prosecutorial misconduct for appeal. . .
>
> Secondly, even if Appellant had objected to the Prosecution's comments in closing, those comments did not violate the Court's ruling prohibiting reference to Mitchell Dades' invocation of the Fifth Amendment. . .The Prosecution did not comment on the reason for Mitchell Dedes' lack of appearance or his exercise of the right to remain silent. Instead, the Prosecution merely pointed out that the Jury heard no eyewitness testimony. The Court's ruling did not prevent the Prosecution from pointing out to the jury that no eyewitnesses testified. In fact, the Defense Counsel herself specifically indicated in opening statements that the jury would not hear from any eyewitnesses. N.T. 202. For the Court to hold that the Prosecution could not confirm Defense Counsel's own previous averments would produce an absurd result. The Appellant appears to argue that the

- 16 -

Prosecution, by pointing out that no eyewitnesses testified, planted the seed in the minds of the jury that the Co-Conspirator in this case, Mitchell Dedes, exercised his Fifth Amendment rights and refused to testify. This argument does not stand especially in light of the Appellant's own assertion in opening statements that the jury would not hear from any eyewitnesses during trial.

Ultimately, the Court finds that the defense took exception to the Prosecution's characterization that the victim in this case was really the only neutral eyewitness who could have testified to what happened to him. This statement does not represent a mischaracterization of the facts, nor would it objectively influence the jury to conclude that Mitchell Dedes exercised his Fifth Amendment rights in violation of the Court's order for Counsel to not speak to that issue. Instead, the reference to the victim as the only eyewitness to the crime qualifies as an oratorical flair to remind the jury that the only unbiased, neutral party with knowledge of the events that night was dead. The reference served as legitimate argument, not an underhanded attempt to tell the jury that Mitchell Dedes exercised his Fifth Amendment rights and declined to testify.

Trial Court Opinion, pp. 15-17. We agree with the trial court's thorough analysis.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2014