J-S10039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KWAME MOORE | |
| Appellant | No. 1123 EDA 2016 |

Appeal from the Judgment of Sentence dated March 4, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003800-2015

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 27, 2017**

Appellant Kwame Moore appeals from the judgment of sentence entered following his conviction for first degree murder and possession of an instrument of crime.[1] We affirm.

The underlying facts of the case were recounted by the trial court in its Pa.R.A.P. 1925(a) opinion, and we need not restate them in detail here. As a brief summary, on December 22, 2013, four young men (Devon Johnson, Larry Smith, Quaron Highsmith, and Ryan Brown) drove together to a house on the 3800 block of Reno Street in Philadelphia to buy drugs. Smith gave Brown a gun and told him to knock on the front door of the house, in exchange for Smith's paying for Brown's drugs.

---

[1] 18 Pa.C.S. §§ 2502(a), 907(a).

When Brown knocked on the door, Appellant answered, shouted at Brown, and shot him. Brown was shot five times: twice in his right shoulder (with one of those bullets hitting his right lung, aorta, and heart), once in his right thigh (this bullet struck his femoral artery and exited the back of his leg), and twice in his knees (one bullet in each knee). In response to the shooting, Johnson exited his vehicle and briefly shot back at Appellant. Johnson, Smith, and Highsmith all fled on foot, but quickly returned to the scene of the shooting and waved down the police, who arrived minutes later. Brown, who was on the ground bleeding when the police arrived, was taken by the police to a hospital and later pronounced dead.[2] A silver 9 mm. handgun was found on the ground next to Brown's body.[3] Seven fired cartridge casings were found at the scene, all of which had been fired from the same firearm; three were found inside the building, three on the porch, and one at the bottom of the front steps. The cartridges had not been fired from the gun found next to Brown's body. Appellant was arrested on March 10, 2015, and charged with murder and related offenses. *See* Trial Ct. Op., 6/13/16, at 1-3.

Appellant's jury trial began on March 1, 2016, and concluded on March 4, 2016. In addition to law enforcement officers, medical and firearms

---

[2] Johnson, Smith, and Highsmith all left the scene once Brown was taken to the hospital.

[3] The gun found next to Brown had no chambered cartridges. *See* N.T., 3/2/16, at 4-5.

experts, and other witnesses, Smith,[4] Highsmith,[5] and Johnson[6] all testified

for the Commonwealth.

---

[4] At trial, Smith denied any knowledge of who killed Brown. He stated that did not know from whom Brown was going to buy drugs, and that because he was inside of the car and looking at his phone, he did not see the shooting. He stated that he knew Appellant, but did not see him at the scene. Smith denied making any statements to the police or testifying before the grand jury. *See* N.T., 3/1/16, at 195-298. The Commonwealth introduced a statement Smith gave to the police on January 8, 2014, just over two weeks after the murder, and which he re-signed before testifying before a grand jury on January 22, 2015. In the statement and grand jury testimony, Smith identified a photograph of Appellant, stated that he has known Appellant for five years, named Appellant as the killer, and described the events of the killing consistently with those set forth above. The Commonwealth also introduced the detective who had taken Smith's statement on January 8, 2014, and a former assistant District Attorney who testified that he reviewed that statement with Smith on January 21, 2015, and that Smith testified consistently with that statement in front of the grand jury the next day. *See* N.T., 3/2/16, at 36-43, 56-73; Commonwealth's Ex. 30 (Larry Smith Interview, dated 1/8/14), 31 (Larry Smith Interview, dated 1/8/14, re-signed 1/21/15), 32 (Grand Jury Transcript, 1/22/15).

[5] Highsmith testified that he observed the shooting, and that it occurred consistently with the description set forth above. He testified that he knew Appellant, and identified him as the shooter. Highsmith had given prior statements to police on March 10, 2014, and January 5, 2015. In the first statement, he told the police that he had not seen the person who shot Brown, but in the second statement, and at a grand jury proceeding on January 22, 2015, he identified Appellant. *See* N.T., 3/2/16, at 109-73; Commonwealth's Ex. 33 (Quaron Highsmith Interview, dated 3/10/14), 34 (Quaron Highsmith Interview, dated 1/5/15), 35 (Grand Jury Transcript, 1/22/15).

[6] Johnson also testified that Appellant killed Brown. Johnson gave a statement to the police on November 18, 2014, and testified in the grand jury proceedings on October 31, 2014 and December 11, 2014. At the hearing on October 31, 2014, Johnson invoked his Fifth Amendment right against self-incrimination and did not answer most of the Commonwealth's questions. In the November 18, 2014 statement and before the December
*(Footnote Continued Next Page)*

During the direct testimony of Detective Laura Hammond, the lead detective on Appellant's case, the following exchange occurred:

[Appellant's counsel]: I do have an objection to the next question.

The court: That objection is overruled. Let's go.

[Commonwealth]: Detective, when [Appellant] was arrested in this case, did you do a search of **various databases** to see if he was associated with any particular addresses?

[Detective Hammond]: Prior to his arrest, yes.

[Commonwealth]: And do you remember off the top of your head an address on Brown Street?

[Appellant's counsel]: Objection.

The court: That's leading. Sustained.

N.T., 3/3/16, at 15-16 (emphasis added).[7]

_____

*(Footnote Continued)* _____

11, 2014 grand jury, however, Johnson testified as to the events of the evening, and identified Appellant as the shooter. **See** N.T., 3/2/16, at 214-56; Commonwealth's Ex. 36 (Devon Johnson Interview, dated 11/18/14), 37 (Grand Jury Transcript, 10/31/14), 38 (Grand Jury Transcript, 12/11/14).

[7] During the charging conference, Appellant elaborated upon his objection:

[Appellant's counsel]: I did make an objection during the detective's testimony.

The court: Yes, about the database, whether or not [Appellant] had any connection to the --- turns out it was the 3900 block of Brown Street.

[Appellant's counsel]: Right. I wanted to, for the record. . . There was a question referring to whether my client, and **we all know it was an arrest database**, it was presented to the jury as another database. It wasn't relevant because it was from

*(Footnote Continued Next Page)*

- 4 -

Appellant presented no witnesses and did not request that the jury be instructed on either self-defense[8] or voluntary manslaughter.[9]

Following his conviction, Appellant received a mandatory sentence of life imprisonment without parole for the murder conviction, and a concurrent sentence of one to two years' incarceration for possession of an instrument

*(Footnote Continued)* ————————

2007 and it's prejudicial because as we heard from the testimony from the . . . detective, she went up there and found it was an empty lot.

The court: At the time I did not know it was an empty lot, but the [c]ourt did overrule your objection, concluding it was a question of the weight of the evidence and not that it was not completely irrelevant. So it was relevant in the sense to establish that [Appellant] had some familiarity with the neighborhood. But your objection is on the record.

N.T., 3/3/16, at 131-32 (emphasis added).

[8] A successful claim of self-defense is a complete defense to criminal liability. *See* 18 Pa.C.S. § 502. Section 505 of the Crimes Code explains that the use of force upon another person "is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion," but not unless "the actor believes that such force is necessary to protect himself against death [or] serious bodily injury," and not if "the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter" or where "the actor knows that he can avoid the necessity of using such force with complete safety by retreating." 18 Pa.C.S. § 505.

[9] A person commits voluntary manslaughter, rather than murder, when a person kills while acting in "imperfect self-defense," by holding an actual, but unreasonable, belief that deadly force is necessary to prevent his own death or serious bodily injury. *See Commonwealth v. Rivera*, 108 A.3d 779, 787 n.2 (Pa. 2014) (citing 18 Pa.C.S. § 2503(b)). During the charging conference, Appellant's attorney stated "Given the circumstances, I don't think – I don't know if there is a voluntary [manslaughter charge] to be added in this case." N.T., 3/3/16, at 122.

- 5 -

of crime. *See* Trial Ct. Op. at 1. Appellant filed a timely post-sentence motion and notice of appeal.

Appellant presents the following issues for our review:

> 1. Is Appellant's conviction for first-degree murder against the weight of the evidence and should a new trial be ordered?
>
> 2. Is the evidence insufficient as a matter of law to convict Appellant of murder in the first degree?
>
> 3. Is the evidence [] insufficient as a matter of law to convict Appellant of murder in the first degree because self-defense was not disproven beyond a reasonable doubt?
>
> 4. Did the trial court err and cause irreparable harm to Appellant by overruling Appellant's objection with regard to Detective Laura Hammond's testimony wherein she testified to a search for Appellant in databases which clearly indicated police databases and, thereby, further indicated that Appellant had prior arrests and/or convictions?

Appellant's Brief at 4. For ease of disposition, we address Appellant's second and third issues first.

## Sufficiency of the Evidence

Appellant argues that there was insufficient evidence presented at trial to support his conviction for first degree murder. We review this issue in accordance with the following:

> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

- 6 -

***Commonwealth v. McFadden***, 156 A.3d 299, 303 (Pa. Super. 2017).

In support of his claim, Appellant highlights the following facts exposed by the evidence at trial: there was a shouting argument between Appellant and Brown; Brown was armed with a nine millimeter handgun, and his weapon was not concealed; there was a bullet mark on the exterior of the house; and there was a nine millimeter bullet casing found inside the house. Appellant's Brief at 13-16. Therefore, according to Appellant, the evidence is insufficient to prove he possessed the specific intent to kill Brown,[10] and insufficient to disprove that he killed Brown while acting in his self-defense.[11] ***Id.*** at 15-16. Appellant states:

> It is reasonable to believe that one is in danger of serious bodily injury if an individual approaches one with a firearm. Appellant did not provoke anything and it is doubtful he had an opportunity to retreat. Appellant objectively feared for his life

---

[10] A first-degree murder conviction requires a finding of specific intent to kill:

> Section 2502(a) of the Crimes Code states, "a criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." Intentional killing is "killing by means of . . . willful, deliberate and premeditated killing." § 2502(d). A "willful, deliberate and premeditated killing" occurs where the actor has manifested the specific intent to end the life of the victim. **The use of a deadly weapon on a vital part of the human body is sufficient to establish the specific intent to kill.**

***Commonwealth v. Randolph***, 873 A.2d 1277, 1281 (Pa. 2005) (brackets and some citations omitted; emphasis added), ***cert. denied***, 547 U.S. 1058 (2006).

[11] It is the Commonwealth's burden to disprove any claim of self-defense beyond a reasonable doubt. ***Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa. Super. 2014).

and even if his response was excessive, he is at most guilty of voluntary manslaughter.

*Id.* at 16.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Barbara A. McDermott, we conclude that there was sufficient evidence presented to establish beyond a reasonable doubt that Appellant acted with a specific intent to kill, and not out of self-defense. **See** Trial Ct. Op. at 6-8 (finding three eye-witnesses identified Appellant as the shooter and two testified at trial that Appellant came out from the doorway firing his gun without Brown ever firing; seven shots were fired at Brown at close range, and Brown was hit five times; Brown was shot in vital body parts (including the right lung, the aorta, the heart, and the femoral artery); and the evidence did not indicate that Appellant had a reasonable belief that he was in imminent danger of death or serious bodily harm).

Regarding Appellant's passing remark that "Appellant objectively feared for his life and even if his response was excessive, he is at most guilty of voluntary manslaughter," Appellant made no argument to the trial court regarding voluntary manslaughter, did not request a jury charge on that issue, and did not raise a claim of imperfect self-defense in his Rule 1925(b) statement. We therefore hold that Appellant waived that aspect of his claim. **See** Pa.R.A.P. 302 (claims may not be raised for the first time on appeal); Pa.R.A.P. 1925(b)(4)(vii) (issues not raised in the 1925(b)

statement are waived); *accord Commonwealth v. Johnson*, 771 A.2d 751, 755 (Pa. 2001).

## Weight of the Evidence

Appellant also argues that his conviction for first-degree murder was against the weight of the evidence presented on that charge. Our standard of review of a challenge to the weight of the evidence is as follows:

> Where the trial court has ruled on a weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, our review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (brackets, quotation marks, and internal citations omitted), *appeal denied*, 134 A.3d 56 (Pa.), *cert. denied*, 132 S. Ct. 106 (2016). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Hairston*, 84 A.3d 657, 664-65 (Pa.), *cert. denied*, 135 S. Ct. 164 (2014).

Appellant claims that the verdict in this case was against the weight of the evidence because Brown only had $4.27 in his possession; there was a nine millimeter bullet found inside the house, and a bullet strike on the exterior of the house; Johnson and Brown had been in possession of handguns during the shooting; Brown had a nine millimeter handgun; and

there were no injuries to Brown's head or chest. Appellant's Brief at 12. Appellant therefore asserts that the evidence more strongly indicates that Brown, Johnson, Smith, and Highsmith "went armed to a house to buy drugs with not enough money to do so," and adds: "If an armed individual approaches a drug[] house and there are shots fired at same, there is an inevitable and objective sense of panic. That panic belies the *mens rea* required for first-degree murder." *Id.* at 12-13.

> A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. In this regard, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court.

*Thompson*, 106 A.3d at 758–59 (citation and internal brackets omitted).

> In ruling on Appellant's weight claim, the trial court found:

> [Appellant]'s weight of the evidence claim for First-Degree Murder is . . . without merit as the verdict was consistent with the evidence and a far cry from shocking one's sense of justice. The Commonwealth presented extensive eyewitness testimony as well as ample scientific and physical evidence that [Appellant]—with the specific intent to kill—shot and killed Ryan Brown. The jury's verdict indicates that they chose to credit this evidence rather than [Appellant]'s theory of the case.

Trial Ct. Op. at 8.

We find that the trial court correctly considered whether the evidence presented at trial supporting a guilty verdict was so tenuous, vague, and uncertain that the verdict shocked the conscience of the trial court, and

found that it did not. We therefore hold that the court did not abuse its discretion in the trial court's disposition of Appellant's weight claim.

**Admission of Detective Hammond's Testimony**

"The admission of evidence is committed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the trial court clearly abused its discretion." *McFadden*, 156 A.3d at 309.

In his final issue, Appellant claims that the trial court abused its discretion by admitting a portion of Detective Hammond's testimony in which she states that she searched for Appellant's address in "various databases." Appellant's Brief at 17. According to Appellant, the jury could reasonably infer from this reference to "databases" that Appellant was involved in prior criminal activity. *Id.* (citing *Commonwealth v. Allen*, 292 A.2d 373, 375 (Pa. 1972)).

Evidence of a defendant's prior criminal history is typically inadmissible because "[t]he presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Allen*, 292 A.2d at 375.[12] For this reason, "[o]nce it is determined that a jury could reasonably conclude from the [evidence] prior criminal activity on the part of the defendant[,] prejudicial error has been committed." *Id.*

---

[12] Certain exceptions exist. *See* Pa.R.E. 404(b); *Allen*, 292 A.2d at 375 n.2. Those exceptions are not at issue here.

- 11 -

However, "references to prior **police contact** do not amount to reversible error." ***Commonwealth v. Young***, 849 A.2d 1152, 1156 (Pa. 2004) (emphasis added). "Instead, it is only those references that expressly or by reasonable implication also indicate some involvement in prior criminal activity that rise to the level of prejudicial error." ***Id.*** For example, an officer's single statement that he knew where the defendant lived did not constitute reversible error, because the jury would have had to "indulge in gross speculation" in order to conclude from the statement that the defendant had a prior criminal history. ***Young***, 849 A.2d at 1155 (citing ***Commonwealth v. Riggins***, 386 A.2d 520 (Pa. 1978)). Similarly, "a jury could not reasonably infer from police possession of the defendant's photograph that the defendant had previously been convicted of a crime." ***Commonwealth v. Parker***, 104 A.3d 17, 28 (Pa. Super. 2014), ***appeal denied***, 117 A.3d 296 (Pa. 2015). "The prior contact with the police could have occurred under a variety of circumstances that were not criminal in nature including involvement in a motor vehicle accident or violation, as a witness to a crime, or as a victim of a crime." ***Id.*** (citation omitted).

The trial court assessed the impact of the testimony challenged here as follows:

> Because the Commonwealth asked the detective about a search of "various databases," nothing in the record indicates that the information came from a specific database. Even if the information were from a police database, the detective's testimony, at best, would have only indicated prior contact with police; not a prior arrest or conviction.

Trial Ct. Op. at 9. We agree, and we hold that the trial court did not abuse its discretion in admitting the testimony related to the search for Appellant in "various databases." First, the detective's testimony did not indicate that the search was of law enforcement databases. We note that in this digital age there are numerous databases listing addresses.[13] Second, even if the jury were to infer that the search was of a law enforcement database, a jury could not reasonably conclude that Appellant's presence in the database was only as a result of a conviction, rather than as, for example, a witness, a victim, or for some other purpose. **Young**, 849 A.2d at 1156; **Parker**, 104 A.3d at 28. The court therefore did not abuse its discretion in admitting the detective's testimony, and Appellant's third issue affords him no relief.

As we affirm in part on the basis of the trial court's opinion, the parties are instructed to attach a copy of the trial court's opinion of June 13, 2016, to any future filing that references this Court's decision.

Judgment of sentence affirmed.

---

[13] Indeed, prior to the remark about address "databases," Detective Hammond testified that she identified the owner of Johnson's car by conducting a search based on the registration found for the vehicle — indicating that she searched a vehicle registration database.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/27/2017</u>

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   : CP-51-CR-0003800-2015

                                :

v.                             :

                                :

KWAME MOORE                   :

## OPINION

McDermott, J.                               **June 13, 2016**

### Procedural History

On March 10, 2015, the Defendant, Kwame Moore, was arrested and charged with

Murder and related offenses. On March 1, 2016, the Defendant appeared before this Court and

elected to be tried by a jury. On March 4, 2016, the jury returned guilty verdicts to First-Degree

Murder and Possession of an Instrument of Crime ("PIC").[1] That same day, this Court imposed

the mandatory sentence of life imprisonment without parole for First-Degree Murder and a

concurrent sentence of one to two years for PIC.[2]

On March 11, 2016, the Defendant filed a Post-Sentence Motion, challenging the weight

and sufficiency of the evidence. This Court denied the motion on March 14, 2016. On April 12,

2016, the Defendant filed a timely notice of appeal. On April 20, 2016, appellant counsel was

appointed. On May 7, 2016, the Defendant timely filed a Rule 1925(b) statement.

---

[1] On March 3, 2016, this Court granted the Defendant's Motion for Judgment of Acquittal to the charge of Firearms
Not to be Carried Without License. N.T. 3/04/2016 at 132.

[2] All other charges were *nolle prossed.*

## Facts

On the night of December 22, 2013, Devon Johnson, in his green Volkswagen, drove Ryan Brown, Larry Smith, Quaron Highsmith to the 3800 block of Reno Street, a known drug area, to buy some "juice" (Codeine syrup) and some Percocets. Upon arrival, Smith asked Brown to knock on the front door of 3817 Reno Street. Brown originally said no. Then Smith said, "I'm not buying you [drugs] if you don't knock on the door." Brown agreed and Smith handed him a gun. Brown exited the vehicle and knocked on the door. N.T. 3/01/2016 at 182–87, 210; N.T. 3/02/2016 at 111, 195–96, 203–07.

After Brown knocked on the door, Highsmith, in the vehicle's passenger seat, heard the Defendant (also known as May Moore) open the front door and yell at Brown. The Defendant demanded to know why Brown had knocked on the screen door. Smith also saw the Defendant yell at Brown. Because Smith could not hear what the two were saying, he got out the car to say something to the Defendant. It was at that moment he saw the Defendant open the screen door and shoot Brown several times. After the Defendant shot Brown, Smith and Highsmith fled in opposite direction. Johnson heard the gunshots and saw Brown spinning and falling off the porch. He also saw the Defendant come out from the doorway firing his gun. Johnson exited his vehicle, shot at the Defendant, and then fled in the same direction as Highsmith. After the shooting, Smith, Highsmith, and Johnson returned to the shooting scene to check on their friend. N.T. 3/01/2016 at 220–21, 245–48; N.T. 3/02/2016 at 160–64, 206–07, 227–28, 243–47.

Police soon arrived and saw the three males standing next to the green Volkswagen, yelling for help. Nearby, the officers found Brown bleeding on the ground. The officers placed Brown in a squad car and drove him to the Hospital of the University of Pennsylvania, where he was later pronounced dead. N.T. 3/01/2016 at 46–53.

2

Brown was shot five times. Two bullets struck Brown in the back of his right shoulder, with one bullet hitting his right lung, aorta, and heart. Another bullet entered the front of his right thigh and exited the back of his leg, striking the femoral artery. Two bullets struck Brown's knees—one to his left knee; the other to his right. The manner of death was homicide, caused by multiple gunshot wounds. N.T. 3/01/2016 at 46–53, 154–70.

By Brown's body, police found a black and silver 9 mm handgun. Police also found seven fired cartridge casing ("FCCs") on the property: three FCCs were found inside the property; another three were found on the porch; and one FCC was found at the bottom of the property's front steps. Police Officer Kelly Walker, of the Firearms Identification Unit, testified that all seven FCCs were fired from the same firearm, which was not the firearm found at the scene. N.T. 3/01/2016 at 114; N.T. 3/03/2016 at 80–81, 87.

On January 7, 2014, Philadelphia police detectives interviewed Larry Smith, where he identified the Defendant as the shooter. Smith told detectives that he knew the Defendant for approximately five years—he shot dice with the Defendant and said "what's up" whenever he saw him. N.T. 3/01/2016 at 210–19; N.T. 3/02/2016 at 62–63.

On March 10, 2014, detectives interviewed Highsmith. Highsmith told detectives that the night Brown was shot, he saw muzzle flashes and a man's arm holding a gun shoot at Brown. In a second statement on January 5, 2015, Highsmith identified the Defendant from a photograph, and wrote "shoot Ryan" on top of the photograph. At trial, Highsmith, as well as Johnson, identified the Defendant as the shooter. N.T. 3/02/2016 at 153, 158–59, 167, 170, 206–07, 227–28, 243–45.

3

## Discussion

The Defendant challenges the First-Degree Murder verdict on weight and sufficiency grounds. The Defendant also claims that this Court erred by overruling the Defendant's objection with regard to Detective Laura Hammond's testimony regarding a database search.

Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt. *Commonwealth v. Baumhammers*, 960 A.2d 59, 68 (Pa. 2008). The Commonwealth may sustain its burden of proving each element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Estepp*, 17 A.3d 939, 943 (Pa. Super. 2011) (*citing Commonwealth v. Brooks*, 7 A.3d 852, 856–57 (Pa. Super. 2010)). The fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder. *Commonwealth v. Treiber*, 874 A.2d 26, 30 (Pa. 2005). The Superior Court considers all the evidence admitted, without regard to any claim of wrongly admitted evidence. *Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010). The Superior Court will also not weigh the evidence or make credibility determinations. *Id.*

First-Degree Murder is any unlawful killing committed with malice and the specific intent to kill. 18 Pa.C.S. § 2502(a); *Commonwealth v. Johnson*, 42 A.3d 1017, 1025 (Pa. 2012). The specific intent to kill as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Thomas*, 54 A.3d 332, 335–36 (Pa. 2012); *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (*citing Commonwealth v. Smith*, 985 A.2d 886, 895 (Pa. 2009)). Evidence is sufficient to sustain a conviction for First-Degree Murder when the Commonwealth establishes that: (1) a human being was unlawfully killed; (2)

4

the accused is responsible for the killing; and (3) the accused acted with specific intent. 18 Pa.C.S. § 2502(a); *Commonwealth v. Chambers*, 980 A.2d 35, 44 (Pa. 2009). The Commonwealth may establish that a defendant intentionally killed the victim wholly through circumstantial evidence. *Id. (citing Commonwealth v. Rivera*, 773 A.2d 131, 135 (Pa. 2001)).

Weight of the evidence and sufficiency of the evidence are discrete inquiries. An argument that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but contends that the verdict is against the weight of the evidence. *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa. Super. 2002). An allegation that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial court. *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. 2005) (*citing Commonwealth v. Sullivan*, 820 A.2d 795, 805–06 (Pa. Super. 2003)).

For a weight of the evidence claim to succeed, the test is whether the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Diggs*, 949 A.2d 873, 879–80 (Pa. 2008). This is a lofty standard as generally this threshold is only met when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his [or her] breath, temporarily, and causes him [or her] to almost fall from the bench; [only] then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 582 (Pa. Super. 2004) (*quoting Nudelman v. Gilbride*, 647 A.2d 233, 237 (Pa. 1994)). To determine whether this standard is met, appellate review is "limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Id.* Hence, this Court's denial of a motion for a new trial based on a weight of the evidence claim "is the least assailable of its rulings." *Id.* at 880.

5

In the case at bar, sufficient evidence established that the Defendant, with the specific intent to kill, murdered Ryan Brown. Brown was shot five times—the manner of death was homicide. Three witnesses identified the Defendant as the shooter. Smith, who knew the Defendant for five years, saw the Defendant yell at Brown, open the screen door, and shoot him. N.T. 3/01/2016 at 245–48, 292–94; N.T. 3/02/2016 at 206–07. Highsmith as well as Johnson—who saw the Defendant come out from the doorway firing his gun—both identified the Defendant as the shooter. N.T. 3/02/2016 at 158–59, 167, 170, 206–07, 216, 243–46.

The Defendant argues that there was insufficient evidence for First-Degree Murder as the Commonwealth failed to prove that the Defendant fired upon vital body parts of the victim. Notwithstanding that the Defendant shot Brown in several vital body parts (the right lung, the aorta, the heart, and the femoral artery) courts have held that "[c]ircumstantial evidence of a specific intent to kill may be drawn from the manner in which the homicide was committed, such as, multiple gunshot wounds." *Commonwealth v. Hughes,* 865 A.2d 761, 793 (Pa. 2004); *see also Commonwealth v. Ramtahal,* 33 A.3d 602 (Pa. 2011) (which listed factors that could be used to show lack of malice, including the number of shots fired, the distance the bullet traveled, and the location of the entry wound). Here, the Defendant shot at Brown seven times, five of which struck him. The volume of shots fired at such a close range and the fact that the Defendant opened the screen door and continued to fire after he came out of the doorway demonstrates his specific intent to kill. This claim is, therefore, devoid of merit.

The Defendant also contends that there was insufficient evidence for First-Degree Murder as the Commonwealth failed to prove beyond a reasonable doubt that he did not act in justifiable self-defense. Once a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving such a defense beyond a reasonable doubt.

6

*Commonwealth v. Rivera*, 983 A.2d. 1210 (Pa. 2009). Although there is no burden upon a defendant to prove a self-defense claim, before such a defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." *Commonwealth v. Mouzon*, 53 A.3d 738, 743 (Pa. 2012) (*quoting Commonwealth v. Black*, 376 A.2d 627 (Pa. 1977)).

The Commonwealth sustains its burden of disproving self-defense "if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger." *Commonwealth v. Burns*, 416 A.2d 506, 507 (Pa. 1980); *see also Mouzon*, 53 A.3d at 740. Deadly force is not justified where there is an avenue of retreat, as long as the defendant knows the avenue is available. *Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009).

As discussed above, the Commonwealth presented sufficient evidence that the Defendant did not reasonably believe that he was in imminent danger of death or great bodily harm. After yelling at Brown, the Defendant demonstrated his specific intent to kill by opening the screen door to shoot Brown, and by continuing to shoot after he came out from the doorway. There was also no evidence that the Defendant feared for his own safety; nor was there any evidence of a struggle between Brown and the Defendant giving rise to a reasonable belief in imminent danger of death or serious bodily harm.[3] The Defendant argues that he acted in self-defense, in that it was the decedent who approached the house and that Maurice Simmons, a resident of the house, had recently been shot at before the subject shooting. The fact-finder was free to reject this argument, and credit the Commonwealth's theory of the case, as it is the jury's purview to

---

[3] The Defendant did not request a justification instruction.

7

believe all, part, or none of the evidence. *See Treiber, supra.* The claims is, therefore, without merit.

The Defendant's weight of the evidence claim for First-Degree Murder is also without merit as the verdict was consistent with the evidence and a far cry from shocking one's sense of justice. The Commonwealth presented extensive eyewitness testimony as well as ample scientific and physical evidence that the Defendant—with the specific intent to kill—shot and killed Ryan Brown. The jury's verdict indicates that they chose to credit this evidence rather than the Defendant's theory of the case.

Lastly, the Defendant claims that this Court erred by overruling the Defendant's objection regarding Detective Hammond's testimony in searching a database for the Defendant. The Defendant avers that the Detective's testimony indicated that she searched for the Defendant in a police database, which implied that the Defendant had had prior arrests or convictions:

> DEFENSE COUNSEL: I do have an objection to the next question.
>
> THE COURT: That objection is overruled. Let's go.
>
> THE COMMONWEALTH: . . . Detective, when the defendant was arrested in this case, did you do a search of various databases to see if he was associated with any particular addresses?
>
> DETECTIVE HAMMOND: Prior to his arrest, yes.
>
> THE COMMONWEALTH: And do you remember off the top of your head an address on Brown Street?
>
> DEFENSE COUNSEL: Objection.
>
> THE COURT: That's leading. Sustained.

N.T. 3/03/2016 at 15–16. Later, defense counsel clarified his objection for the record:

> DEFENSE COUNSEL: I did make an objection during the detective's testimony.

8

THE COURT Yes, about the database, whether or not the [D]efendant had any connection to the -- turns out it was the 3900 block of Brown Street.

DEFENSE COUNSEL: Right. I wanted to, for the record.

THE COURT: We were not -- I told you to do this so go ahead.

DEFENSE COUNSEL: There was a question referring to whether my client, and we all know it was an arrest database, it was presented to the jury as another database. It wasn't relevant because it was from 2007 and it's prejudicial because as we heard from the testimony from the officer, she -- or the detective, she went up there and found it was an empty lot.

THE COURT: At the time I did not know it was an empty lot, but the Court did overrule your objection, concluding it was a question of the weight of the evidence and not that it was not completely irrelevant. So it was relevant in the sense to establish that the [D]efendant had some familiarity with the neighborhood. But your objection is on the record.

*Id.* at 131–32. Because the Commonwealth asked the detective about a search of "various databases," nothing in the record indicates that the information came from a specific database. Even if the information were from a police database, the detective's testimony, at best, would have only indicated prior contact with police; not a prior arrest or conviction. Prior contact with the police can occur under a variety of circumstances that are not criminal in nature including involvement in a motor vehicle accident or violation, or being a witness or a victim to a crime. *Commonwealth v. Young,* 849 A.2d 1152, 1156 (Pa. 2004). Thus, this claim is without merit.

For the foregoing reasons, the Defendant's judgment of sentence should be affirmed.

BY THE COURT,

Barbara A. McDermott, J

9