J-S08017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CALVIN ADAMS | |
| Appellant | No. 1524 EDA 2014 |

Appeal from the Judgment of Sentence of June 28, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0003586-2011

BEFORE:  DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                **FILED FEBRUARY 17, 2015**

Calvin Adams appeals his June 28, 2012 judgment of sentence.  We affirm.

The trial court summarized the factual history of the case as follows:

On January 18, 2011, two employees, Juan Tapia and Omar Velazquez, were working at Franciany Market located at 965 E. Ontario Street, when two men, [Adams] and Rasheed Williams entered the store.  Williams was wearing a mask exposing only his eyes and a part of his nose.  Williams placed a bottle of detergent on the countertop, pulled out a black semi-automatic handgun, and pointed it at Juan Tapia who was standing at the register.  [Adams] pulled a silver handgun and pointed it at Omar Velazquez.  Williams attempted to gain entry to the register area but could not because it was located behind a locked door.  At that point, both men left the store; however, Williams returned within seconds when employee Juan Tapia, unlocked the door.  Williams then entered the register area, pointed the gun at Tapia, removed approximately $300.00 from the register, and fled from the store.  The incident was recorded by a video camera inside the store.

On January 21, 2011, police received information that the male in the mask was Rasheed Williams. Williams was placed into a photo array [that] was shown to Omar Velazquez. Velazquez identified Williams as one of the men that participated in the robbery.

On January 27, 2011, police responded to a shooting at 845 East Westmoreland Street. Williams was a witness to the shooting and was brought to East Detectives for questioning. It was determined that Williams was a resident of the property and that he shared the second floor middle bedroom with his girlfriend. Detectives obtained a search warrant for 845 East Westmoreland Street as a result of the shooting incident. Police found a rifle and two guns in the second floor middle bedroom. One was a 9 mm Beretta handgun, Model 65490, with plastic grips. The second was a five-shot, .38 revolver[], Harrington-Richardson, serial number AS54627. The Beretta was loaded with 15 rounds and one in the chamber. The Harrington was loaded with 5 rounds. In the same room, police found parole paperwork in the name of Rasheed Williams, a pair of blue and black Nike sneakers (like those worn by one of the gunman in the video), and a black neoprene mask (like the one worn by that same gunman in the video).

While in police custody, Williams gave a statement in which he admitted to his role in the robbery. He stated that the Beretta found at 845 East Westmoreland Street was the gun that he used in the robbery. He also admitted to having worn the sneakers and mask found at 845 East Westmoreland Street during the robbery. Williams stated to the police that [Adams] was the individual who took part in the robbery with him. Williams then identified [Adams] in a picture from a photo imager. [Adams] was arrested on February 3, 2011.

Trial Court Opinion ("T.C.O."), 7/11/2014, at 2-4 (citations to record omitted).

The trial court summarized the initial procedural history as follows:

[Adams] was charged with two counts of Robbery (F1), Possession of an Instrument of Crime (M1), Criminal Conspiracy (F1), and Violation of the Uniform Firearms Act by a Convicted Felon not to have a Gun (F2).[1] [Adams] pled not guilty to all charges. [Adams] elected to have a jury trial which began on April 11, 2012.

T.C.O. at 1.

During trial, Williams testified on behalf of the Commonwealth. However, his testimony was limited, and he answered either that he did not recall or did not remember to almost every question posed by the assistant district attorney about the robbery and his statement to police. Notes of Testimony ("N.T."), 4/13/2012, at 11-34. During his testimony, Detective Francis Green read the statement Williams gave during his police interview. That testimony included the following exchange:

[Commonwealth]: Please continue [reading the statement].

[Detective Green]: (reading)

Question: I had showed you numerous photos on the imager. Did you see [Adams] on the computer?

Answer: Yes. (identifying Calvin Adams PP Number 718286.[)]

*Id.* at 68. Adams' counsel objected. The trial court sustained that objection and struck the last part of the statement. After reading the statement into the record, the Commonwealth asked Detective Green if he had any contact

---

[1]    18 Pa.C.S.A. §§ 3701(a)(1), 907, 903, and 6106 respectively.

with Adams after Williams gave his statement. This line of questioning led to the following testimony:

[Commonwealth]: Can you tell the ladies and gentlemen of the jury how you had contact with Mr. Adams?

[Detective Green]: Well, Detective Liebsch got information that Mr. Adams had a parole officer or a probation officer, and –

[Counsel for Adams]: Objection!

The Court: Come to side-bar, please.

(in camera side-bar without court reporter)

([Adams] raising arm with prison bracelet exposed.)

[Tipstaff]: Sir, don't do that. Don't do that.

[Adams]: It's already out there.

*Id.* at 72-73. Adams then was removed from the courtroom. The tipstaff also sent the jury out of the courtroom.

When the judge and attorneys reconvened, Adams' counsel moved for a mistrial. The trial court questioned Detective Green about his objectionable testimony. According to Detective Green, he was "explaining what information I had that I knew how [Adams] was brought to East Detectives." *Id.* at 77.

Out of the presence of the jury and the witnesses, the trial court then took testimony from Terry Alexander, the judge's tipstaff, and Daniel Howlett, the court crier, about Adams' actions while the judge and counsel were in chambers. Mr. Alexander testified that Adams raised his right arm

in the air to expose his prison ID band to the jury. When asked to stop, Adams replied that "[the jury] already know now." N.T. at 81-83. Mr. Alexander then had the jury removed and had the sheriff escort Adams from the courtroom. *Id.* at 83. Mr. Howlett confirmed Mr. Alexander's account and testified that the band was white with Adams' photo on it. *Id.* at 83-85. The trial court explained that it was not granting a mistrial, in part because of Adams' own actions. *Id.* at 85-87. Adams' counsel then requested a curative instruction. *Id.* at 88. The trial court gave the following instruction:

> You heard the detective mention about [Adams] being on parole, or words to that effect. You are to totally disregard that commentary and it is not to be considered by you as evidence for purposes of your deliberations. You must base your decisions only on the evidence you see and hear in the courtroom. As I told you earlier, if I strike evidence which I have, that particular portion of the evidence, if I tell you you are not to consider it, you must base your decision on the evidence that I specifically tell me [*sic*] you you may consider, and that you should consider. If there is a need to strike evidence and not consider evidence, I will let you know like I am doing now.
>
> By a show of hands, does everyone understand me? Let the record reflect that everyone raised his or her hand.

*Id.* at 90-91.

The trial then resumed. The trial court summarized the remaining procedural history as follows:

> On April 17, 2012, the jury convicted [Adams] of two counts of Robbery, Possession of an Instrument of Crime, and Criminal Conspiracy. On June 28, 2012, the [c]ourt sentenced [Adams] to 10-20 years['] incarceration for each count of Robbery to run concurrently; 10-20 years['] incarceration for Criminal

- 5 -

Conspiracy to run consecutively with the Robbery sentences; and 5 years['] probation for Possession of an Instrument of Crime to run consecutively to the other sentences. [Adams did not file a direct appeal.] On August 2, 2012, [Adams] filed a Post-Conviction Relief Act ("PCRA") petition [, 42 Pa.C.S.A. §§ 9541-46].

On October 18, 2012, and November 5, 201[3], [Adams] filed amended PCRA petitions and a Memorandum of Law.[2] On May 13, 2014, the [PCRA court] granted the PCRA petition [and reinstated Adams' direct appeal rights]. Thereafter, on May 18, 2012, [Adams] filed a Notice of Appeal, and on June 10, 2014, the [c]ourt ordered counsel to filed a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). [Adams] filed a statement on June 16, 2014. . . .

> [2] On August 2, 2012, [Adams] filed a PCRA petition *pro se*. On October 18, 2012, [Adams] filed an amended PCRA petition and a Memorandum of Law *pro se*. Court appointed counsel later entered his appearance on July 1, 2013 and filed an amended PCRA petition on November 5, 2013.

T.C.O. at 1-2 (footnote omitted).

Adams raises one issue for our review:

1. Did the trial court err in failing to grant a mistrial when Detective Francis X. Green revealed to the jury that [Adams] had been previously convicted of a crime and thereby undermined the presumption of innocence and denied [Adams] an impartial jury and a fair trial?

Adams' Brief at 4.

In reviewing a question of whether a trial court erred in denying a motion for a mistrial, an appellate court considers whether the lower court abused its discretion.

***Commonwealth v. Young***, 849 A.2d 1152, 1154 n.1 (Pa. 2004).

Adams argues that Detective Green's references to Adams' prior arrest and conviction unfairly prejudiced the jury. Detective Green referred to Adams' police photo number. Adams contends that the reference implied that Adams previously had been arrested or convicted. Detective Green also stated that he had contacted Adams through a parole or probation officer. Adams asserts that this confirmed that Adams had a prior conviction. Adams argues that the trial court's curative instruction was insufficient to mitigate the resulting prejudice and argues that the testimony was not harmless. Therefore, Adams asserts that the trial court erred in refusing to grant a mistrial. Adams' Brief at 8-13.

Rule 605 of the Rules of Criminal Procedure governs when a mistrial should be granted and states, in pertinent part, as follows:

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

Pa.R.Crim.P. 605(B). Regarding the use of prior criminal activity in a trial, we have said:

> It is well established that evidence of other criminal activity generally is inadmissible against a defendant at his trial on another charge. *Commonwealth v. Roman*, 351 A.2d 214 (Pa. 1976); *Commonwealth v. Groce*, 303 A.2d 917 (Pa. 1973). The reason behind this rule is that the Commonwealth should prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, without stripping him of the presumption of innocence by proving that he has committed other criminal acts. *Commonwealth v. Stanley*, 398 A.2d 631 (Pa. 1979); *Roman*, *supra*. . . .

> We have noted in the past that our cases have not established a per se rule requiring a new trial for every prejudicial reference of this type. *See Commonwealth v. Seigrist*, 385 A.2d 405 (Pa. Super. 1978). The prejudicial effect of the reference may be overcome by cautionary instructions, *Commonwealth v. Williams*, 368 A.2d 249 (Pa. 1977), or an appellate court may find that any error was harmless. *Commonwealth v. Knight*, 364 A.2d 902 (Pa. 1976).

*Commonwealth v. Stokes*, 421 A.2d 240, 245 (Pa. Super. 1980) (citations modified).

"Not all references [that] may indicate prior criminal activity require reversal. Mere passing references to criminal activity will not require reversal unless the record indicated that prejudice resulted from the reference." *Commonwealth v. Guilford*, 861 A.2d 365, 370 (Pa. Super. 2004). When considering whether a mistrial is necessary, the trial court should consider "the nature of the reference and whether the remark was intentionally elicited by the Commonwealth." *Commonwealth v. Gilliard*, 446 A.2d 951, 954 (Pa. Super. 1982). Additionally, if the trial court can "overcome any possible prejudice" with a cautionary instruction, a mistrial is unnecessary. *Commonwealth v. Johnson*, 846 A.2d 161, 166 (Pa. Super. 2004). "[T]he extreme remedy of a mistrial is not automatically required if it is determined that the inference of prior criminality was innocuous and that effective curative instructions were immediately given." *Commonwealth v. Fernandez*, 482 A.2d 567, 570 (Pa. Super. 1984).

In *Young, supra*, our Supreme Court addressed whether a mistrial was warranted when a police detective made reference to a police photo

number. In that case, the detective explained that witnesses were shown photographs from an imager that displayed photographs of people "who have had contact with the police." 849 A.2d at 1153. The detective testified that the witness "identified a photograph of [the defendant], Police Photo Number 775. . . ." *Id.* at 1154. The Court recited the general rule that a mere passing reference to police photographs does not *per se* require a mistrial. *Id.* at 1155. Instead, only those references "that expressly or by reasonable implication also indicate some involvement in prior criminal activity" rise to prejudicial error. *Id.* at 1156. In *Young*, the Supreme Court concluded that the detective's statements were passing references that did not indicate prior criminal activity. *Id.*

Here, Detective Green's statement regarding Adams' photograph was similar to the statement in *Young*. In *Young*, the detective specifically referred a police photo number. Here, Detective Green used the abbreviation "PP Number." This statement was, at most, a passing reference and did not indicate an involvement in prior criminal activity.

More troubling is Detective Green's reference to Adams' parole or probation officer. Nonetheless, "[a]n isolated passing reference to prior criminal activity will not warrant reversal unless the record indicated that prejudice resulted from the remark." *Commonwealth v. Maute*, 485 A.2d 1138, 1143 (Pa. Super. 1984). Instead, in determining whether a mistrial is warranted, the court should consider the nature of the remark, whether the remark was deliberately introduced or exploited by the Commonwealth, and

whether a prompt curative instruction was given. *Id.* (discussing *Commonwealth v. Richardson*, 437 A.2d 1162 (Pa. 1981)). In *Maute*, a witness, during cross-examination by defense counsel, stated that she had known the defendant "since he came home from jail." *Id.* Because defense counsel elicited the statement, it was a passing reference, the comment was neither repeated nor emphasized, and did not refer to specific criminal conduct, we held that the trial court did not err in refusing to grant a mistrial.[2] *Id.*

Similarly, in *Commonwealth v. Guilford*, during a robbery trial, two police officers offered testimony that could have caused the jury to infer that the defendant was involved in a second crime. 861 A.2d 365, 370 (Pa. Super. 2004). One police officer testified that, while he was speaking with the victim, another officer told him that they had a man who they were "holding from a prior job." *Id.* The second officer said that, after they arrested the defendant, two officers brought two victims to identify the defendant. We found that the testimony "was not intentionally elicited by the Commonwealth," and that both references were brief. Therefore, relief was not warranted. *Id.*

---

[2] We also noted that any resulting prejudice would have been cured by an instruction, but that defense counsel refused the trial court's offer of a curative instruction because counsel did not want to draw attention to the remark. *Id.*

- 10 -

However, when a jury hears testimony about specific prior criminal activity, the resulting prejudice may be such that a curative instruction will not rectify the situation. In **Commonwealth v. Laughman**, in response to a question about how he knew the defendant, the victim answered:

> I ran into [the defendant] at the Lucky Spot Restaurant. . . . [The defendant] came in with two other guys. He sat down, and I don't know what he was saying, I wasn't listening to him because it was him and two other guys. He had spit in my food and I looked down at the food and he came leaping over the table and I jumped up and we both grabbed butcher knives and we both were arrested, and he was found guilty and they left me go.

452 A.2d 548, 549 (Pa. Super. 1982). The Commonwealth told the trial court that the witness had been warned not to testify about the prior criminal record. **Id.** Further, the Commonwealth did not inquire further about that incident and the trial court gave a cautionary instruction. **Id.** at 550. We found that the trial court erred in refusing a mistrial because the testimony "unnecessarily conveyed to the jury the express fact of a prior criminal offense" and a curative instruction could not remedy the resulting prejudice. **Id.** In so ruling, we emphasized that the defendant felt compelled to testify about the incident to minimize its impact. **Id.**

In the instant case, Detective Green's reference to Adams' parole or probation officer implied Adams' had engaged in prior criminal activity. However, it was a brief remark and the Commonwealth did not further inquire about Adams' parole or probation. Thus, it resembled the witness' remark in **Maute** about the defendant returning from jail and the police

- 11 -

officers' testimony in **Guilford** that indicated the defendant was a suspect in a second crime. Unlike in **Laughman**, Detective Green did not refer to a specific criminal incident, nor did he describe any prior criminal acts. Detective Green's testimony did not compel Adams to testify in an attempt to explain or minimize Detective Green's statement.[3] Finally, the trial court immediately gave a strong curative instruction. Based upon all of these circumstances, Detective Green's statement did not cause the type of prejudice that could not be remedied by a curative instruction. Having given an appropriate instruction, the trial court did not err in denying the request for a mistrial.[4]

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/17/2015

_____

[3] Although initially Adams planned to testify, he ultimately chose not to do so. N.T., 4/17/2012, at 4-5.

[4] The trial court concluded that Adams should not benefit from any prejudice that resulted from displaying his prison ID bracelet because the display was Adams' fault. T.C.O. at 6-7. Because we hold that there was any prejudice from Detective Green's statements was remedied by the court's curative instruction, and because Adams does not argue that his display alone warranted a mistrial, we need not address this issue.